[Civ. No. 9571. Fourth Dist., Div. One. May 22, 1970.]

STEVEN J. VINSON, Plaintiff and Appellant, v.
HAM BROTHERS CONSTRUCTION, INC., et al.,
Defendants and Respondents.

## COUNSEL

Walter P. Christensen for Plaintiff and Appellant.

Welsh & Gibson, Welsh, Gibson & Legro, Louis M. Welsh, McInnis, Fitzgerald & Wilkey and William G. Bailey for Defendants and Respondents.

## OPINION

**AULT, J.**—Appellant, Steven J. Vinson, received serious personal injuries on September 1, 1965, when he drove his motorcycle through a barricade and into an open ditch which had been excavated part way across Grant Avenue in Escondido, California. He brought suit to recover damages against Ham Brothers Construction, Inc. (Ham), the construction company that dug the ditch, the City of Escondido, and Flasher Company of Southern California (Flasher), the company which furnished certain of the barricades and the blinker lights used and erected by Ham. The case was tried by a jury. On motion, a nonsuit was granted to Flasher, and no appeal has been taken from the judgment entered thereon. At the close of evidence, Ham and the City of Escondido moved for a directed verdict on the grounds (1) the evidence was insufficient as a matter of law to establish negligence, and (2) the evidence established as a matter of law appellant was guilty of contributory negligence. The motions were granted, and the court directed

the jury to return a verdict in favor of Ham and the City of Escondido and against appellant. The appeal is from the judgment entered on the verdict returned in accordance with the court's direction.[1]

On appeal, appellant questions the propriety of the directed verdict, maintaining, under the evidence, the issues of negligence and contributory negligence should have been submitted to the jury.

■ The rules governing the power of the trial court to direct a verdict are the same as those applicable to the granting of a nonsuit. They are stated in the case of *Estate of Lances,* 216 Cal. 397, 400 [14 P.2d 768]: "A nonsuit or a directed verdict may be granted 'only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given.' (Citations) Unless it can be said as a matter of law, that, when so considered, no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal, or the trial court to set it aside as a matter of law, the trial court is not justified in taking the case from the jury."

More recently, the rules have been stated in the following manner: "A case can be taken from the jury because of insufficient evidence only when, disregarding all questions of credibility, and all unfavorable evidence, and indulging all rational inferences to help the resisting party, there is still a *total* lack of substantial evidence to support a verdict in his favor. The issue is then one of law, with nothing for the jury to decide, since the evidence will support only one possible verdict and that against him." (*Grafton* v. *Mollica,* 231 Cal.App.2d 860, 862 [42 Cal.Rptr. 306], quoting from Stansbury, Cal. Trial and Appellate Practice, p. 760.)

■ It is likewise well established that the issues of negligence and contributory negligence are ordinarily mixed questions of fact and law for jury determination. (*Mosley* v. *Arden Farms,* 26 Cal.2d 213, 217 [157 P.2d 372, 158 A.L.R. 872]; *Hudson* v. *Rainville,* 46 Cal.2d 474, 477 [297 P.2d 434].) Cases in which either may be said to exist as a matter of law are rare. Negligence and contributory negligence may be determined as a matter of law, ". . . only if reasonable men following the law can draw but one conclusion from the evidence presented." (*Gray* v. *Brinkerhoff,* 41

---

[1]Ham and the City of Escondido do not contend any distinction should be made as to their respective liability. On appeal, both contend there was no evidence to indicate neglignce in the marking and lighting of the street obstruction, and the evidence established appellant's contributory negligence as a matter of law.

Cal.2d 180, 183 [258 P.2d 834].) (See also *Hudson* v. *Rainville, supra,* 46 Cal.2d 474, 477.)

The question presented is whether the record contains substantial evidence upon which the jury could have found respondents Ham and the City of Escondido were legally responsible for appellant's injuries. Under the rules stated above, we must consider the evidence in the light most favorable to appellant.

On the date of the accident, Grant Avenue was a two-lane black-topped street, without curbs, in Escondido, California, running generally east and west. The eastbound and westbound lanes of travel were marked by a broken white line, which did not divide the street evenly. The westbound traffic lane was approximately 12 feet in width and the eastbound lane was 19 feet wide. The posted speed limit was 25 miles per hour. There were no street lights in the area. For some time prior to the accident, a subdivision had been under construction along the north side of Grant Avenue. Ham was the sewer subcontractor for the construction project. While no work had been done in the street itself, approximately two weeks before the accident a 4' x 4' sign reading, "Caution—Construction Zone" had been installed at the north edge of the roadway about 150 yards west of the subdivision. The sign was not illuminated.

On the morning of September 1, 1965, the date of the accident, respondent Ham began digging five sewer trenches from the subdivision property into Grant Avenue. The trenches were 30 inches wide, from 5 to 8 feet deep and approximately 50 feet apart. They extended across the entire westbound lane of Grant Avenue and about one foot into the eastbound lane. Appellant's misadventure, which occurred between 7:30 and 8 p.m. on that date, involved him with the first trench to confront westbound traffic.

When work stopped that afternoon, the five ditches had been completed, but no sewer pipe had been laid. Ham had ordered 11 barricades, each equipped with a battery-operated flashing light, delivered to the job site. The barricades were approximately 2 feet wide and 30 inches high. A flashing light was mounted on the top outer edge of each barricade and the upper cross-board of each was lined with diagonal strips of reflectorized colored tape. Ham placed the barricades around the trenches. Two barricades with lights were placed approximately 16 feet east of the first trench, one beyond the center line of the street and the other near the north edge of the pavement. An unlighted barricade, of a different type, was placed between the two lighted barricades. It bore a small sign reading, "Keep Left." The other nine barricades with blinking lights were placed in line down the center of the street to prevent cars from striking the ends of the other four ditches. The effect of the obstruction was to require westbound

traffic to change lanes and proceed past the trenches by using the east-bound lane.

After all Ham's employees had left the job, the site was visited by Mr. Elder, an inspector for the City of Escondido. He observed the conditions, went to his office and telephoned Ham, stating, ". . . there was need for a warning to the traffic, westbound traffic." Elder did not indicate what additional steps should be taken and he did not return to the construction area again that day. Thereafter Ham's superintendent returned to the job and placed two more signs. One read, "Detour," with an arrow pointing to the left. This sign was placed at the righthand edge of the roadway in direct line with the two lighted barricades and the small sign reading, "Keep Left." The other sign read, "One Lane Only—Caution." It was placed 52 feet east of the front barricades at the right edge of the road. Neither sign was illuminated.

On the date of the accident, appellant was a minor. He had previously ridden motorcycles, but had owned and driven the heavier motorcycle involved in the accident for only two days. It was the first occasion he had ridden the cycle at night. He had traveled on Grant Avenue frequently and was familiar with the area. He had noticed the subdivision project and the construction zone sign which had been up for about two weeks. He was aware there had been no construction work in the street itself when he had previously driven through the area. Earlier on the morning of September 1, he had ridden his motorcycle on Grant Avenue through the area to pick up Miss Janet Frank, his girl friend, to take her from her parents' home near the scene of the accident, to spend the day at his parents' home. (At the time of trial appellant and Miss Frank were married.)

At that time in the morning no work had started in Grant Avenue. Appellant worked that day for the Forestry Service. He was returning Miss Frank to her parents' home when the accident occurred.

At the trial, appellant testified he turned into Grant Avenue from Citrus Avenue at a point approximately 200 yards east of the construction site. As he turned the corner, he increased his speed from 25 to 30 miles per hour. He noticed the blinking lights ahead, but it appeared to him they were in a line down the center of the street. He continued at the same speed, and as he neared the construction area, he was blinded momentarily by the headlights of a car approaching from the opposite direction. He saw the signs, "all bunched up" just before he struck the center unlighted barricade. The motorcycle left six feet of skid before striking the first ditch. Appellant and his wife both testified at the trial the headlight of the motorcycle was on.

The investigating officer estimated the speed of the motorcycle to be

between 31 and 40 miles per hour when it struck the barricade. He interviewed appellant at the hospital after the accident where appellant told him he was probably going too fast and estimated his speed at 40 to 45 miles per hour. At the time the statement was made, appellant was under sedation awaiting surgery. He testified he had no recollection of making the statement. While appellant testified at trial the light on the motorcyle was on, in his deposition he stated he believed he had turned it on at the beginning of the trip, but would not swear to it.

Applying the rules we have already stated concerning directed verdicts, we conclude the evidence does not establish respondents to be free from negligence as a matter of law. ▮ The right to obstruct a public street to construct necessary public improvements carries with it a corresponding duty to erect adequate barriers, lights and warning devices to protect those who travel the street from injury. "When erected, the sufficiency of these barriers, or lights or other warning signals is a question of fact for jury determination." (*Stockton Auto Co.* v. *Confer,* 154 Cal. 402, 406 [97 P. 881].) ▮ Moreover, in view of the dangerous condition created, we would not classify the precautionary measures taken in the instant case as optimal. The greatest danger presented was to westbound traffic whose entire lane of travel was blocked by the ditches. The critical danger point was the first ditch to confront westbound motorists. To protect against this 30-inch wide, 5 to 8 foot deep ditch, dug across the entire lane of travel in an unlighted area, respondent Ham placed a line of signs and barricades just 16 feet in front of the trench. One light was placed on a small barricade near the center of the street; the other blinking light was placed on a similar barricade located near the outer edge of the road. Between the two blinkers, was an unlighted barricade carrying a small sign reading, "Keep Left." The larger sign, with the arrow and the word "Detour," was not placed in the center of the lane, but at its extreme outer edge, where it was less likely to be seen and where the pointing arrow was in itself confusing. The only other significant warning given was an unlighted sign reading, "One Lane Only—Caution," again placed at the edge of the roadway 52 feet east of the line of barricades. No attempt was made, by the proper placement of lights and barricades, to channel westbound traffic gradually into the eastbound lane it must necessarily use before it reached the lead trench. We think the evidence presented substantial questions of fact as to whether respondent Ham used due care and properly guarded the obstruction it had created in the public street.

▮ Nor can the question of appellant's contributory negligence be considered as wholly isolated from and unrelated to respondents' own conduct. The two are inextricably interwoven. It is one thing to drive an unlighted vehicle at night, heedlessly and headlong, into a well marked and lighted

obstruction in the street, and quite another for the driver, proceeding in a basically normal manner, to miscalculate because a street obstruction is poorly lighted and badly guarded. The record contains evidence which would support a finding for or against appellant on the issue of contributory negligence. We would be bound by either finding had it been made by the jury. To arrive at either conclusion, however, it is necessary to judge the credibility of witnesses, to weigh the evidence, to resolve conflicts and to choose between conflicting inferences. When considering a directed verdict, neither this court nor the trial court, is permitted to make such determinations. (*Grafton* v. *Mollica, supra,* 231 Cal.App.2d 860, 862; *Estate of Lances, supra,* 216 Cal. 397, 400.)

The judgment, based upon the directed verdict, is reversed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied June 5, 1970.