[No. A091762. First Dist., Div. One. Oct. 19, 2001.]

CODY F., a Minor, etc., et al., Plaintiffs and Appellants, v. THOMAS J. FALLETTI, Defendant and Respondent.

[No. A092552. First Dist., Div. One. Oct. 19, 2001.]

CODY F., a Minor, etc., et al., Plaintiffs and Appellants, v. UNION BANK OF CALIFORNIA, Defendant and Respondent.

[No. A092539. First Dist., Div. One. Oct. 19, 2001.]

CODY F., a Minor, etc., et al., Plaintiffs and Appellants, v. CHARLES McLAUGHLIN, Defendant and Respondent.

[No. A093075. First Dist., Div. One. Oct. 19, 2001.]

CODY F., a Minor, etc., et al., Plaintiffs and Appellants, v. CRYSTAL CLOUD et al., Defendants and Respondents.

## COUNSEL

Trezza, Ithurburn, Steidlmayer & Ithurburn, Michael J. Trezza and Bertrand F. Ithurburn for Plaintiffs and Appellants.

Fortune, Drevlow, Schmidt, Nakano and Mark W. Hudson for Defendants and Respondents in Nos. A091762 and A093075.

Spencer Law Firm and John S. Spencer for Defendant and Respondent in No. A092552.

Cesari, Werner & Moriarty, Andrew S. Werner and James J. Patrick Spencer for Defendant and Respondent in No. A092539.

## OPINION

**MARCHIANO, J.**—This case arises from a dog attack resulting in tragic injuries to 11-year-old Cody F. The attack occurred on a private road within a subdivision and was witnessed by Cody's mother and sister. The respondents, property owners and association members in the Rancho Tehama Subdivision Association (RTA), owned access easements over the road. Respondents obtained favorable dispositions on the pleadings in the trial court and Cody, his mother and sister have appealed.

Appellants ask this court to expand the scope of an easement owner's liability to cover this fact situation, even though the owner did not create the hazard, did not own the dogs, had no interest in the land from which the dogs escaped and did not own the road where the attack took place. The suggested basis for this expanded liability is the respondents' right to use the roads within the subdivision and their status as association members of a planned unit development. In general, courts have imposed a duty to prevent the harm caused by a third party's animal when a defendant possesses the means to control the animal or the relevant property and can take steps to prevent the harm. Appellants' theory does not fit within the boundaries of the existing law because the element of control is absent from this case.

Residents of a common interest subdivision may be close neighbors, but they are not their brother's keeper when it comes to policing activities on private property.[1] We affirm the judgments because the easement owners did not have any duty of care to prevent the harm that occurred.

### BACKGROUND

Because this appeal follows the granting of demurrers and motions for judgment on the pleadings, we rely only on the allegations of the complaint and matters that were properly the subject of judicial notice in setting out the relevant facts.[2] (*Fosgate v. Gonzales* (1980) 107 Cal.App.3d 951, 957 [166 Cal.Rptr. 233].)

The Rancho Tehama subdivision is a large planned development, managed by an incorporated property owners association (RTA) that is responsible for maintenance of the private streets and promulgation and enforcement of rules for use and enjoyment of the streets. The powers of the

---

[1]"There is always a chance that he who sets himself up as his brother's keeper will end up by being his jailkeeper." (Hoffer, The Passionate State of Mind (1955), The Columbia World of Quotations <http://www.bartleby.com/66/8/28608.html> [as of Aug. 17, 2001].)

[2]Additional documents that were relied on by all parties and were properly the subject of judicial notice in the trial court include recorded grant deeds, articles of incorporation of the RTA filed with the Secretary of State, the recorded declaration of restrictions of the subdivision and the department of real estate's filed final subdivision public report.

nonprofit corporation are exercised by its board of directors, who are elected by the members. Every person who acquires title to a lot within the subdivision is a member of the RTA and has one vote. Each of the streets within the subdivision is a private street. The assessor's map shows ownership of each lot extends to the center of the street, so the lot owners own the portion of the street in front of their property. The declaration of restrictions states, in the paragraph entitled "Easements," that the predecessor of respondent Union Bank of California reserved for itself and the members of the RTA, tenants, and their invitees, an easement "for ingress and egress over each private street . . . ."

Appellants' Judicial Council form complaint for general negligence and premises liability alleges that James Wick, not a party to these appeals, occupied lot No. 1398 of the Rancho Tehama Subdivision, where he kept and trained over 20 vicious dogs, used for commercial boar hunting and guarding purposes in violation of the recorded declaration of restrictions of the subdivision. On September 6, 1998, in front of Wick's lot, Cody F. was badly mauled by Wick's dogs.[3]

The alleged basis for the liability of the respondents to this appeal, who did not own the dogs, the property they escaped from, or the road where the attack occurred, is alleged as follows in the causes of action for negligence and premises liability.[4]

"Defendants' negligence included the creation and maintenance of an unreasonably dangerous private street, open to the use of persons such as plaintiffs and their invitees, due to the allowance of a unit owner, and association member James Byron Wick, to keep over twenty (20) non-household dogs that he commercially trained to be vicious guard dogs to attack persons, and commercially trained them to attack wild boar in packs; and, to keep such dogs unsecured and adjacent to said street for a prolonged period of time, and even after other owners and associate members were attacked and bit by the dogs, to create and maintain a nuisance and create the dangerous street condition, and cause the said risks to be activated in plaintiff Cody F. . . . .

"Defendants . . . owner and association members, . . . and d/b/a a joint venture or enterprise called Rancho Tehama Association, so negligently and

---

[3]The complaint alleges that the street was open to "persons such as plaintiffs and their invitees." Judicially noticed documents established that the private streets are open only to members of the RTA and their invitees. Appellants have, therefore, alleged that they, like respondents, are members and residents of the subdivision.

[4]Although appellants alleged causes of action for negligence and premises liability, the basis for imposition of a duty alleged under both causes of action is the possession of an access easement in the subdivision. There are no allegations of negligence concerning respondents other than acts related to easement ownership and membership in the RTA.

willfully managed their Association rights and the private streets especially Laramie Point in front or about Lot No. 1398, a lot owned by Association member defendant Wick, as to cause the street to be in an unreasonably dangerous condition for any pedestrian to use . . . .

"Defendants' negligence also included the deliberate neglect in enforcing the restriction prohibiting the keeping of dogs on the subdivision and excepting only dogs which would constitute a household pet so long as such dog did not become a nuisance to other members . . . which neglect concurred with the willful and tortious conduct of James Byron Wick who was keeping, for commercial purposes over twenty (20) viciously trained dogs on his unsecured subdivision lot, immediately adjacent to defendants' street . . . ."

The cause of action for premises liability alleges:

"[P]laintiff was injured on the following premises in the following fashion . . . [t]he private street, owned and reserved for use by the Union Bank of California National Association . . . on Rancho Tehama Subdivision and maintained by The Rancho Tehama Association, by delegation, in front of Lot 1398 on Laramie Point occupied by association member JAMES BYRON WICK and where he kept over twenty (20) vicious dogs . . . and kept for a prolonged period after being commonly known to be a nuisance to other occupants and in violation of recorded declaration of restrictions for the welfare of other property residents, . . . and resulted in causing the street to be in an unreasonably dangerous condition to result in the dogs mauling the passerby and harming plaintiffs . . . ."[5]

The viability of appellants' claim of spoliation of evidence has been resolved by the decisions in *Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 17 [74 Cal.Rptr.2d 248, 954 P.2d 511] (no tort remedy for the intentional spoliation of evidence by a party to the cause of action); *Temple Community Hospital v. Superior Court* (1999) 20 Cal.4th 464, 466

---

[5]The premises liability cause of action also alleged failure to warn of the existence of a dangerous condition or activity. The court in *Wylie v. Gresch* (1987) 191 Cal.App.3d 412 [236 Cal.Rptr. 552] (*Wylie*) held that even a landowner has no duty to warn prospective tenants of a vicious dog in the neighborhood when the plaintiffs were just as likely to discover the dog's presence. In assessing the consequences of requiring such warnings, the court observed: "In our view, creation of a requirement that landlords warn prospective tenants of dangers in the neighborhood would 'produce a cacaphony [*sic*] of warnings that by reason of their sheer volume would add little to the effective protection of the public.' [Citation.] Furthermore, such a requirement would place the landlord in the position of being a purveyor of gossip and warnings that are groundless." (*Wylie, supra,* 191 Cal.App.3d at pp. 424-425.) The same considerations that weigh against creating a duty to warn also weigh against creation of a duty to protect on the part of respondents in this case.

[84 Cal.Rptr.2d 852, 976 P.2d 223] (no tort cause of action for intentional spoliation against person who is not a party to lawsuit); and *Coprich v. Superior Court* (2000) 80 Cal.App.4th 1081, 1083 [95 Cal.Rptr.2d 884](no tort remedy for negligent spoliation). Appellants raise no issue on appeal regarding that claim.

On November 16, 1999, respondent Thomas J. Falletti demurred to the complaint, arguing that neither his association membership nor his interest in an access easement over the private road where the attack occurred supported creation of a duty to appellants. On April 26, 2000, the court entered a judgment dismissing the action against Falletti after sustaining his demurrer without leave to amend.

Other respondents followed Falletti's lead. On April 17, 2000, Charles McLaughlin moved for judgment on the pleadings, arguing that, assuming for purposes of his motion that he was a property owner, such an owner has no duty under the facts alleged in the complaint. Union Bank joined in McLaughlin's motion, and subsequently filed its own motion for judgment on the pleadings. On May 4, 2000, respondents Robert Wysocki, John and Dorothy Kilgore and Crystal Cloud filed separate motions for judgment on the pleadings and Mr. and Mrs. James T. Hixon filed a demurrer, asserting essentially the same arguments as were contained in the Falletti demurrer.

On May 10, 2000, the court granted the various motions of the respondents without leave to amend. Judgments were subsequently entered. Appellant appealed separately from each decision. Upon stipulation of the parties, we consolidated these appeals for purposes of decision and oral argument.

DISCUSSION

The complaint alleges that Cody's injuries occurred in the private street in front of Wick's lot No. 1398. Appellants argue that respondents are liable for their injuries because the subdivision's recorded declaration of restrictions states that residents have easements for ingress and egress over the private streets within the subdivision, and because they are members of the RTA, which is alleged to be responsible for enforcing restrictions on dog ownership. After reviewing these contentions, we conclude that the respondents owed no duty to appellants in this case.

In addition to the paragraph of the restrictions referencing easements, another paragraph of the restrictions, entitled "Ownership, Use and Enjoyment of Streets, Parks and Recreational Amenities," states: "An easement for the use and enjoyment of each of said streets and areas designated on the

maps as parks is reserved to Trustee, its successors and assigns; to the persons who are, from time to time, members of the association . . . and to the invitees of all of the aforementioned persons." Appellants argue that this language establishes a broader interest than the grant of a right of ingress and egress in the previous paragraph of the restrictions, but do not suggest how one generally uses and enjoys a road other than by using it for ingress and egress, or traversing it on foot or by vehicle. In any event, the use and enjoyment clause, which concerns other areas (apparently owned by the RTA) as well as the streets, does not enlarge either the nature of the interest or the scope of responsibility attached to the easements at issue.

*Easement Holders Owe No Duty Under the Facts Alleged in the Complaint*

██ The question of duty is one of law, to be determined by evaluation of several public policy factors, including the following factors that are relevant to this appeal: "[T]he closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach . . . ." (*Wylie, supra,* 191 Cal.App.3d at pp. 416-417 [landlord has no duty to warn of vicious dog in neighborhood]; *Nava v. McMillan* (1981) 123 Cal.App.3d 262, 266-267 [176 Cal.Rptr. 473] [dog owner has no duty to passerby who jumped into the street and was struck by a car after being frightened by fenced dog].) We address appellants' contentions, keeping the relevant factors in mind.

██ Appellants begin their argument with the proposition that: "[A]n owner or occupier of land is required to exercise ordinary care in the management of his property and the breach of such duty constitutes actionable negligence. [Citations.] . . . [¶] A landowner or possessor owes a duty of care to persons who come on his property as well as to persons off the property for injuries due to the landowner's lack of due care in the management of his property. [Citations.] A landowner may be held liable for negligently allowing livestock to escape from his property onto a highway. [Citations.] Generally, the duty owed by a landowner is nondelegable. [Citations.]" (*Davert v. Larson* (1985) 163 Cal.App.3d 407, 410 [209 Cal.Rptr. 445] (*Davert*); Civ. Code, § 1714.)

Regarding the duty of an easement holder, appellants rely on the general statement that: "An easement owner has an interest in real estate and has the same duty and responsibilities to third persons who enter the premises as has any other property owner. Because the owner of an easement has a duty to maintain and repair the easement, he or she also must keep it free from any

dangerous condition that might injure third persons who rightfully come on the easement . . . ." (6 Miller & Starr, Cal. Real Estate (3d ed. 2000) Easements, § 15:68, p. 220, fns. omitted.)

From these assertions, appellants draw the conclusion that because an easement is an interest in real property, all easement holders are liable to the same extent as any landowner for anything that occurs on the easement. The flaw in this conclusion is that the particular lack of due care attributed to respondents is the failure to prevent Wick from letting his dogs escape from Wick's own property. No negligent act by respondents regarding the ingress and egress easement is alleged. Moreover, the alleged involvement of the respondents does not impose a duty to act. The respondents did not have a right of control over Wick's property, Wick's dogs, or the road. The law does not impose responsibility where there is no duty because of the absence of a right to control. (Cf. *Martinez v. Bank of America* (2000) 82 Cal.App.4th 883, 894 [98 Cal.Rptr.2d 576].)

Appellants rely on *Davert, supra,* 163 Cal.App.3d 407; *Ruoff v. Harbor Creek Community Assn.* (1992) 10 Cal.App.4th 1624 [13 Cal.Rptr.2d 755] (*Ruoff*); *Portillo v. Aiassa* (1994) 27 Cal.App.4th 1128 [32 Cal.Rptr.2d 755] (*Portillo*); and *Baley v. J.F. Hink & Son* (1955) 133 Cal.App.2d 102 [283 P.2d 349] (*Baley*) in their efforts to impose a duty on the easement holders in this case. Each of those cases involved a distinctly different ownership interest and accompanying duty of care from what is implicated in this appeal.

In *Davert,* the defendants were individual owners, as tenants in common, of real property consisting of common areas in a recreational community. A horse escaped from the land owned by the defendants and collided with the plaintiff's car traveling on the adjacent road. The *Davert* court rejected the argument that the property owners had delegated their responsibility to exercise due care in the management of land they owned to an owners association and reversed a summary judgment based on that argument. The court explained that the defendants in *Davert,* like condominium owners who own common areas as tenants in common, had a nondelegable duty to exercise ordinary care in the management of their property. (*Davert, supra,* 163 Cal.App.3d at p. 410.) Unlike the *Davert* defendants, respondents here do not own the land from which the dogs escaped, or the road itself, but only a right to pass over it. Because of these differences, respondents' duty to third parties is not as broad as that of the landowners in *Davert.*

*Ruoff, supra,* 10 Cal.App.4th 1624, concerned residents of a condominium complex, similar to the defendants in *Davert,* who as tenants in common

owned the property where the plaintiff was injured. *Ruoff* is distinguishable from appellants' case for the same reasons as *Davert*. The residents of Rancho Tehama do not have the same legal right and ability to control the access easement as does an actual property owner, such as a tenant in common.

*Portillo, supra,* 27 Cal.App.4th 1128, involved a commercial landlord who had a duty to inspect the premises of the tenant and the power to remove a dangerous dog that was openly kept on the property. (*Id.* at p. 1135.) Unlike a landlord, respondents here have no right or power to inspect Wick's property and no authority to force him to remove or control his dogs. *Portillo* does not assist in the analysis of this case.

Finally, *Baley, supra,* 133 Cal.App.2d 102, concerned liability of a department store owner for a dog attack where the owner allowed a dog on his property. Like the other cases relied on by appellants, *Baley* involves ownership, possession and control of the land as well as control of the dangerous instrumentality. None of the cases cited by appellants imposed a duty on mere holders of an access easement to control tortious conduct of third parties.

■ It is generally true that: "A person is liable for injuries to another only as a result of his or her own conduct. Liability is based not on responsibility for the conduct of others, but on the failure of the [land]owner or occupier to act reasonably under the circumstances when he or she has reason to anticipate the probability of injury and has an opportunity to prevent the injury or warn of the peril. Thus, liability is based on his or her own failure to act reasonably. . . . [¶] . . . [¶] Premises liability for the criminal or negligent conduct of a third party that arises from the special relationship between the owner or occupier of real property and a person injured by the wrongful conduct of a third person requires that there be some connection between the harm suffered by the injured person and the actual condition of the property, or some activity being conducted on the property." (8 Miller & Starr, Cal. Real Estate, *supra*, Landowners' Liability, § 22:53, pp. 244-245.) ■ In this case, the condition of the easement has no connection to appellants' injuries. Respondents did not conduct any harmful activity on the site of the easement. The only connection to the harm alleged is respondents' nonexclusive right to pass over the private streets.

The owner of an easement is not the owner of the property, but merely the possessor of a "right to use someone's land for a specified purpose, such as a driveway, a drainage ditch or even a pipeline." (*Long Beach Unified Sch. Dist. v. Godwin Liv. Trust* (9th Cir. 1994) 32 F.3d 1364, 1368 [nature of

easement owned by telephone and electric utilities did not make them "owners" for purposes of toxic waste cleanup liability].) The easement owner has no possessory right in the land beyond the limited use of the land granted by the easement. (*Ibid.*; *Darr v. Lone Star Industries, Inc.* (1979) 94 Cal.App.3d 895, 901 [157 Cal.Rptr. 90] [easement is nonpossessory interest in real property, but not an estate in land].) The nature of the duty owed by the owner of an interest in real property must have a relationship to the degree of control conferred by the scope of the ownership interest itself. An easement interest does not necessarily translate into a tort duty.

Examples demonstrating the required relationship between a plaintiff's injury and the scope of the easement owner's rights in the land are primarily cases involving power companies with easements for the placement of electric lines. (See, e.g., 8 Miller & Starr, Cal. Real Estate, *supra*, Landowners' Liability, § 22:40, pp. 156-157, fn. 31.) In these examples, the scope of the easement was to maintain and operate an electric power line. (*Dunn v. Pacific Gas & Electric Co.* (1954) 43 Cal.2d 265 [272 P.2d 745].) In such a case, liability is imposed on the easement holder for harm caused by the presence of the electrical fixtures. (43 Cal.2d at p. 275; see also *Polk v. City of Los Angeles* (1945) 26 Cal.2d 519, 525 [159 P.2d 931] [duty of care must be commensurate with dangerous character of electricity]; *Lozano v. Pacific Gas & Elec. Co.* (1945) 70 Cal.App.2d 415, 420 [161 P.2d 74] [power company liable for electrocution by uninsulated wires].) A duty clearly arises for one who creates and controls the potential hazard.

In *Vinson v. Ham Bros. Constr., Inc.* (1970) 7 Cal.App.3d 990 [87 Cal.Rptr. 12], a case not involving an electrical utility, a sewer subcontractor had the right to obstruct a public street to dig trenches. A motorcyclist struck an unlighted barricade that the subcontractor had placed in front of the open trench. The court determined that the subcontractor's conduct could support a finding of lack of due care in properly safeguarding the obstruction created on the land. (*Id.*, at pp. 996-997.) *Vinson* is another example of the nature of the necessary connection between the harm caused and the scope of the right to use the street. (See also *Low v. City of Sacramento* (1970) 7 Cal.App.3d 826 [87 Cal.Rptr. 173] [county hospital that improperly maintained parking strip liable for plaintiff's injury from fall in water-filled rut in parking strip].)

Appellants have not cited, and we are unaware of, any case in which an easement holder was held responsible for an action that had no relationship to the scope of the easement granted. None of the cited cases imposed a duty to guard against third party torts in the absence of any connection to the scope of the interest represented by the easement. To impose such a duty on

respondents would make each resident of Rancho Tehama the insurer of the safety of everyone who enters the subdivision. Public policy does not stretch the concept of duty that far. (See, e.g., *Martinez v. Bank of America, supra,* 82 Cal.App.4th 883 [no connection between bank's ownership through foreclosure on property and attack by dog of former owners who refused to surrender possession]; *Scott v. Chevron U.S.A.* (1992) 5 Cal.App.4th 510 [6 Cal.Rptr.2d 810] [no connection between landowner's conduct in placing electrical equipment on its easement near roadway and plaintiff's injuries caused when drunk driver hit guardrail in front of equipment and struck plaintiff's vehicle].)

The existence of a duty relies upon application of the following factors: " 'The social utility of the activity out of which the injury arises, compared with the risks involved in its conduct; the kind of person with whom the actor is dealing; the workability of a rule of care, especially in terms of the parties' relative ability to adopt practical means of preventing injury; the relative ability of the parties to bear the financial burden of injury and the availability of means by which the loss may be shifted or spread; the body of statutes and judicial precedents which color the parties' relationship; the prophylactic effect of a rule of liability; . . . and finally, the moral imperatives which judges share with their fellow citizens . . . .' [Citation.]" (*Munoz v. Davis* (1983) 141 Cal.App.3d 420, 426, fn. 3 [190 Cal.Rptr. 400].) Imposition of a duty in this case would not promote any of these policy factors.

The policy of preventing future harm caused by uncontrolled dogs attacking passersby is unquestionably important. But that policy is not served by imposing liability on neighbors who have only limited rights over the easement where the attack occurred, and no control over the tortfeasor's actions or the property from which the dogs escaped. The probable consequences to the community of requiring these neighbors, as individual citizens, to regulate each other's actions on their own private property include increased neighborhood disputes, suspicion, possible trespassing to discover hazards and other undesirable behavior by concerned but overly zealous residents.

We conclude that under the facts alleged in this case, ownership of an access easement alone does not support creation of a duty to police the residence properties of adjacent neighbors for violations of the RTA regulations.

*Association Members Have No Individual Liability for Acts of Third Parties*

The problems posed by the attempt to hold respondents liable for acts of a third party are acknowledged by appellants, who argue that RTA

membership supplies the necessary ability to control Wick's actions, and supports imposition of a duty on the easement holders. Appellants argue that the recorded declaration of restrictions prohibits keeping dogs for commercial purposes or when their presence could constitute a nuisance to others. They also contend that the restrictions provide the answer to what action the respondents could have taken to protect against appellants' harm. They rely on a clause that allows, but does not require, the RTA or any party to "proceed at law or in equity to prevent the occurrence, continuation or violation of any of the restrictions . . . ." In other words, appellants seek to fasten liability on all members of the RTA for failing to file a lawsuit against Wick.

Appellants candidly acknowledge in their reply briefs that they are not actually attempting to impose liability merely by reason of RTA membership, stating: "[R]espondents are not being sued as members of an association, they are being sued as owners of real property." This concession is understandable in light of the lack of authority for imposing tort liability solely on the basis of membership in a property owners association. Moreover, the rights conferred on the individual members by the RTA's declaration of restrictions do not include a duty to exercise those rights.

The directors of such an association have no vicarious liability for torts of the association, even though they, unlike a member that has only a single vote, are the policymakers that control the association's conduct. (*Frances T. v. Village Green Owners Assn.* (1986) 42 Cal.3d 490, 504 [229 Cal.Rptr. 456, 723 P.2d 573, 59 A.L.R.4th 447] (*Frances T.*).) In *Frances T.*, the Supreme Court determined that the directors of a condominium owners association could not be held liable as individuals unless they personally participated in a wrongful action. (*Id.* at pp. 503-506.) "Like any other citizen, corporate officers have a societal duty to refrain from acts that are unreasonably risky to third persons . . . ." (*Id.* at p. 506, fn. 12.)

The Supreme Court set out the required allegations to state a tort cause of action against association directors in their individual capacities: "To maintain a tort claim against a director in his or her personal capacity, a plaintiff must first show that the director specifically authorized, directed or participated in the allegedly tortious conduct [citation]; or that although they specifically knew or reasonably should have known that some hazardous condition or activity under their control could injure plaintiff, they negligently failed to take or order appropriate action to avoid the harm [citations]. The plaintiff must also allege and prove that an ordinarily prudent person, knowing what the director knew at that time, would not have acted similarly under the circumstances." (*Frances T., supra*, 42 Cal.3d at pp. 508-509.)

Individual association members have even less decisionmaking control than individual directors. Appellants have not alleged that respondents authorized a wrongful act, or had the ability to control Wick's hazardous activities, aside from the general ability of any citizen to file a lawsuit. Respondents here, who are merely residents of the subdivision, had no power to control Wick or his dogs. Each respondent possessed only a single vote on RTA affairs and did not make policy for the association. Appellants are unable to allege the existence of any hazardous condition or activity under the control of the residents of Rancho Tehama subdivision to support the imposition of a duty as members of the RTA.[6]

CONCLUSION

The right of control that attends ownership of an easement has a narrower scope than the right of control that accompanies fee ownership of real property. Therefore, the corresponding duty to third parties in managing the property interest must also be narrower in scope and tied to the reason that the easement is granted. The judgments appealed from are affirmed.

Stein, Acting P. J., and Swager, J., concurred.

---

[6]The liability of the RTA is a separate issue which is not before us.