Filed 5/16/23  C.S. v. Gentry CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| C.S., a Minor, etc.<br><br>     Plaintiff and Appellant,<br><br>     v.<br><br>KAREN GENTRY,<br><br>     Defendant and Respondent. | D079741<br><br><br><br>(Super. Ct. No. 37-2019-00005115-CU-PO-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Kenneth J. Medel, Judge.  Affirmed.

Kirby & Kirby, Michael L. Kirby, Jason M. Kirby, and Heather W. Schallhorn for Plaintiff and Appellant.

Bonnie R. Moss & Associates; Karen D. Wood & Associates, and Elizabeth MacKinnon for Defendant and Respondent.


I

INTRODUCTION

This negligence lawsuit arises out of an incident in which a seven-year-old minor, appellant C.S., was bitten and seriously injured by a pet dog on a

public beach.  C.S., acting by and through his guardian ad litem, sued the owner of the dog as well as respondent Karen Gentry, who accompanied the dog owner and her pet dog to the beach where the incident occurred.  The trial court granted Gentry's motion for summary judgment, finding she owed no legal duty of care to C.S.  We agree with the trial court.  Therefore, we affirm the judgment in favor of Gentry.

## II

## BACKGROUND

A. *Factual Background*

In May 2018, Nada Hamouda, an adult, adopted a two- or three-year-old dog named Gunnie from an animal shelter in Michigan where she lived.  Gunnie was a type of a pit bull called American Bully.  About two or three months after the adoption, Hamouda travelled with Gunnie to San Diego so she could enroll in a medical treatment program in the area.

At the time, Gentry was dating Hamouda's father and the two of them lived together in Gentry's home in Poway.  After Hamouda came to San Diego, she and Gunnie stayed with her father and Gentry in Gentry's home.  During their stay, Hamouda walked, fed, and cared for Gunnie.  Gentry never walked Gunnie, fed him, or took him to the veterinarian.

The dog bite forming the basis of this action occurred five weeks after Hamouda and Gunnie came to San Diego.  That day, Hamouda, Hamouda's father, Gentry, and a friend drove with Gunnie to a public beach in Hamouda's father's car.  While they were at the beach, Gunnie was kept on a leash, though he was not muzzled.  Gunnie sat on or near the group's beach blanket and laid underneath a beach umbrella.  Hamouda also walked Gunnie and played with him near the water.

Another group of beachgoers sat 20 or 30 feet away from them. The group included seven-year-old C.S., C.S.'s father, C.S.'s sibling, and two other adults. C.S. played with toys and went back and forth between the water and the group's beach blanket. According to Hamouda and Gentry, C.S. also approached Gunnie several times over the course of the afternoon, which scared Gunnie and caused him to shake and hide from the child. Hamouda and Gentry claimed they repeatedly warned C.S. to stay away to avoid scaring Gunnie, but C.S. kept coming close to them.

At some point in the afternoon, Gentry and Hamouda's father went on a walk while Hamouda stayed behind with Gunnie. About one or two hours later, while Gentry and Hamouda's father were still on their beach walk, Gunnie bit C.S. on his arm. C.S. received prompt medical attention, but the bite wound on his arm was serious and required more than a dozen stitches.

Hamouda's father drove his companions and Gunnie back to Gentry's home where Gunnie was placed on bite quarantine for 10 days. Soon after, the San Diego Humane Society issued a letter of intent to declare Gunnie a dangerous dog within the meaning of San Diego County Code section 62.602. A dangerous dog declaration requires the owner to euthanize the dog or comply with various mandates including microchipping the dog, displaying warning signs at the owner's residence, muzzling the dog while in public, and carrying tens of thousands of dollars in home liability insurance. Hamouda elected to have Gunnie euthanized. Gunnie was put down and Hamouda left Gentry's home a few days later.

B. *Procedural Background*

C.S., by and through his guardian ad litem, filed a complaint against Hamouda and Gentry for ordinary negligence and strict liability (under the common law and Civil Code section 3342). The complaint requested

3

compensatory damages according to proof. Gentry filed an answer generally denying the allegations of the complaint.

After a year of discovery and other pretrial proceedings, Gentry moved for summary judgment or, in the alternative, summary adjudication. She argued she was entitled to dismissal of the ordinary negligence cause of action because she owed no legal duty of care to C.S. In particular, she asserted she did not owe C.S. a duty because she did not own or care for Gunnie, the dog bite occurred at a public beach away from her residence, she was not physically present when the dog bite occurred, and she had no prior knowledge that Gunnie had aggressive or violent tendencies. Similarly, she argued she was not strictly liable for the dog bite because she was not Gunnie's owner, keeper, or custodian.

C.S. filed an opposition arguing Gentry owed him a legal duty of care because every person, in the exercise of his or her activities, has a duty to use reasonable care for the safety of others. He asserted the legal duty of care was not subject to an exception because the kind of harm he suffered was foreseeable and Gentry could have prevented the injury by removing Gunnie from the beach or warning C.S.'s adult companions about the threat Gunnie posed. Finally, C.S. argued Gentry was strictly liable because she possessed and/or controlled Gunnie by permitting Hamouda and Gunnie to stay in her home.

After a hearing, the trial court granted Gentry's motion for summary judgment. With respect to the negligence cause of action, the court reasoned Gentry owed no legal duty of care to C.S. because the undisputed material facts showed Gentry did not own Gunnie, she was unaware Gunnie had violent or dangerous propensities, the dog bite happened on a public beach away from her residence, and she was not physically present when the dog

4

bite occurred. Similarly, the court found C.S. could not prevail on his strict liability cause of action because Gentry did not own or care for Gunnie and she had no knowledge he had violent or dangerous tendencies.

C.S. appeals the ensuing judgment in favor of Gentry and challenges the summary judgment ruling as to the negligence cause of action, but not the strict liability cause of action.[1]

## III

## DISCUSSION

The question presented in this case is whether a person who accompanies an adult owner of a pet dog and his or her pet dog to a public space (Gentry) owes a legal duty of care to members of the public (C.S.) to take reasonable measures to ensure the dog does not bite or otherwise harm them. The trial court found no such duty exists, and we agree.

A. *Summary Judgment Standards*

"[G]enerally, from commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. ... There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof."

---

[1] In their appellate briefs, both parties make unsupported statements about the procedural posture of C.S.'s lawsuit against codefendant Hamouda. " 'Any statement in a brief concerning matters in the appellate record— whether factual or procedural and no matter where in the brief the reference to the record occurs—*must be supported by a citation to the record.*' [Citation.] We have the discretion to disregard contentions unsupported by proper page cites to the record." (*Professional Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958, 970; see Cal. Rules of Court, rule 8.204(a)(1)(C).) We exercise our discretion to disregard the parties' unsubstantiated statements concerning the status of C.S.'s lawsuit against Hamouda.

(*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).)  A defendant who moves for summary judgment "bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto." (*Ibid*.)

"[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact …." (*Aguilar, supra*, 25 Cal.4th at p. 850.)  Where the plaintiff would bear the burden of proof by a preponderance of the evidence at trial, a defendant moving for summary judgment "must present evidence that would require a reasonable trier of fact *not* to find any underlying material fact more likely than not—otherwise, *he* [the defendant] would not be entitled to judgment *as a matter of law*, but would have to present *his* evidence to a trier of fact." (*Id.* at p. 851.)  If the moving party satisfies the initial burden of production, "he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Id.* at p. 850.)

" 'Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion.  [Citation.]  " 'We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.' "  [Citation.]  We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.' " (*Conroy v. Regents of University of Cal.* (2009) 45 Cal.4th 1244, 1249–1250.)

B. *Gentry Owed No Legal Duty of Care to C.S.*

"To establish a cause of action for negligence, the plaintiff must show that the 'defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury.' [Citation.] Recovery for negligence depends as a threshold matter on the existence of a legal duty of care. [Citation.] [¶] Duty is not universal; not every defendant owes every plaintiff a duty of care. A duty exists only if ' "the plaintiff's interests are entitled to legal protection against the defendant's conduct." ' " (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 213 (*Brown*); see also *Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 472 (*Parsons*) [the concept of legal duty is " ' " 'only an expression of the sum total of those *considerations of policy* which lead the law to say that the particular plaintiff is entitled to protection.' " ' "].) " 'A duty of care may arise through statute' or by operation of the common law." (*Sheen v. Wells Fargo Bank, N.A.* (2022) 12 Cal.5th 905, 920.) "Whether a duty exists is a question of law to be resolved by the court." (*Brown*, at p. 213.)

C.S. asserts Gentry owed him a legal duty of care under Civil Code section 1714,[2] which codifies "the default rule that each person has a duty 'to exercise, in his or her activities, reasonable care for the safety of others.' " (*Brown, supra*, 11 Cal.5th at p. 214.) Although Civil Code section 1714 pronounces a broad rule, "it has limits. … [T]he law imposes a general duty of care on a defendant only when it is the defendant who has ' "created the risk" ' of harm to the plaintiff, including when ' "the defendant is responsible

---

[2] Civil Code section 1714, subdivision (a), provides in relevant part: "Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself."

for making the plaintiff's position worse." ' … The law does not impose the same duty on a defendant who did not contribute to the risk that the plaintiff would suffer the harm alleged. Generally, the 'person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another' from that peril." (*Brown*, at p. 214.)

In addition, C.S. argues Gentry was Gunnie's "keeper" because she allowed Hamouda to stay in her home with Gunnie prior to the dog bite incident. According to C.S., the common law imposes a duty on a "keeper" of a domestic animal to anticipate the threat of harm posed by the animal and exercise ordinary care to prevent such harm. (See *Drake v. Dean* (1993) 15 Cal.App.4th 915, 924–925; *Buffington v. Nicholson* (1947) 78 Cal.App.2d 37, 42 (*Buffington*) [" 'The word "keeper" is equivalent to "the person who harbors." Harboring means protecting. So one who treats a dog as living at his house, and undertakes to control his actions is the owner or keeper within the meaning of the law; but the casual presence of an animal on his premises, if not so treated, does not constitute him such owner or keeper.' "], italics omitted.)

Notwithstanding Civil Code section 1714, and the common law principles on which C.S. relies, Gentry argues the trial court correctly ruled she owed no legal duty of care to C.S. In support of this argument, Gentry invokes the multifactor test promulgated in *Rowland v. Christian* (1968) 69 Cal.2d 108 (*Rowland*). The *Rowland* test is not "a freestanding means of establishing duty, but instead … a means for deciding whether to limit a duty derived from other sources." (*Brown, supra*, 11 Cal.5th at p. 217.) Stated differently, it is "a guide for determining whether to recognize an 'exception' to the general duty of care under [Civil Code] section 1714," or an exception to a duty derived from some other source. (*Id.* at p. 218; see *Golick v. State of*

8

*Cal.* (2022) 82 Cal.App.5th 1127, 1151 ["the 'purpose of the *Rowland* factors is to determine whether the relevant circumstances warrant limiting a duty already established' "].)

The *Rowland* factors include "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland, supra*, 69 Cal.2d at p. 113.)

The first three *Rowland* "factors—foreseeability, the certainty of the injury, and the closeness of the connection between the plaintiff and the defendant—address the foreseeability of the relevant injury. [Citation.] The remaining four—moral blame, the policy of preventing future harm, the burden on the defendant and the general public, and the availability of insurance—focus on the public policy justifications for or against carving out an exception" to the duty of care for a category of cases. (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 165.) "Because a judicial decision on the issue of duty entails line-drawing based on policy considerations, 'the *Rowland* factors are evaluated at a relatively broad level of factual generality.' " (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1143.) In evaluating the *Rowland* factors, our role is not to determine " 'whether they support an exception to the general duty of reasonable care on the facts of the particular case before us, but whether carving out an entire category of cases from that general duty rule is justified by clear considerations of policy.' " (*Id.* at pp. 1143–1144.)

9

We agree with Gentry that the *Rowland* factors counsel against recognition of a legal duty of care under the circumstances presented. Of all the *Rowland* factors, "whether the injury was foreseeable is the most important in determining whether an exception should exist to the duty to protect." (*Colonial Van & Storage, Inc. v. Superior Court* (2022) 76 Cal.App.5th 487, 502.) In assessing foreseeability, "[o]ur task ' "is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed." ' [Citations.] We do, however, evaluate the kind of third party conduct involved in light of all the surrounding circumstances as probative in assessing generally whether the category of [Gentry's] alleged negligent conduct is sufficiently likely to result in the kind of harm plaintiff[] experienced. 'What is "sufficiently likely" means what is " 'likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it in guiding practical conduct.' " ' " (*Ibid.*)

The evidence presented to the trial court indisputably showed that Gentry was not Gunnie's owner—a fact all parties appear to accept on appeal. Gentry also presented uncontroverted evidence that she had no prior knowledge Gunnie had violent or aggressive tendencies,[3] and no evidence was submitted establishing that Gunnie had previously bitten, attacked, or otherwise injured any person or any other animal. Thus, C.S. effectively seeks to hold Gentry liable in negligence for the mere act of accompanying an

---

[3]     For instance, Gentry submitted a declaration in which she averred she "did not feel or believe Gunnie to be a dangerous dog before the Subject Incident," and she "had no reason to believe that Gunnie should be considered a dangerous dog before the Subject Incident."

10

adult dog owner and her pet dog—a dog that was kept on its leash and had no known aggressive or violent tendencies—to a public space.

We do not believe the kind of harm that occurred here was foreseeable as a result of such conduct. In short, unless one actually knows a pet dog has aggressive or violent tendencies, it is not sufficiently likely one's mere act of accompanying the owner of the pet dog and his or her dog to a public space will result in a member of the public being bitten or otherwise harmed by the dog.[4] (See *Martinez v. Bank of America* (2000) 82 Cal.App.4th 883, 895 ["In the absence of prior similar incidents—i.e., previous attacks by vicious dogs at the … property—the requisite degree of foreseeability rarely, if ever, can be proven"]; accord *Ucello v. Laudenslayer* (1975) 44 Cal.App.3d 504, 514 [a landlord owes a duty of care to a tenant's invitees to prevent injury from a dangerous dog on the leased premises only when "he kn[ows] of the dog and its dangerous propensities"]; *Buffington, supra*, 78 Cal.App.2d at p. 42 ["a keeper in contrast to an owner, is not an insurer of the good behavior of a dog, but must have scienter or knowledge of the vicious propensities of the animal before liability for injuries inflicted by such animal shall attach to

---

[4]     C.S. does not explicitly argue that Gunnie's breed—a type of pit bull-like breed called American Bully—made it foreseeable that a member of the public would suffer a dog bite or other injury. However, in his opening brief, he broadly states that "[p]it bulls are commonly known to bite and be vicious." Insofar as C.S. impliedly suggests we can infer foreseeability of harm based on Gunnie's breed alone, we reject that argument. (*Yuzon v. Collins* (2004) 116 Cal.App.4th 149, 168 ["it would be improper to take judicial notice that all adult male pit bulls are dangerous"]; *Chee v. Amanda Goldt Property Management* (2006) 143 Cal.App.4th 1360, 1371–1372 ["evidence that the breed of dog has certain characteristics,[] by itself, is insufficient to support an inference that [defendant] had actual knowledge that his tenant's dog had any dangerous propensities"].)

11

him"].)  The lack of foreseeable harm here weighs strongly in favor of recognizing an exception to the duty of care.[5]

The second *Rowland* factor requires us to assess the degree of certainty C.S. suffered injury.  (*Rowland, supra*, 69 Cal.2d at p. 113.)  Here, it is undisputed C.S. suffered a serious bite wound requiring medical attention. This factor weighs against finding an exception to the legal duty of care.

Under the third *Rowland* factor, we must consider "the closeness of the connection between the defendant's conduct and the injury suffered." (*Rowland, supra*, 69 Cal.2d at p. 113.)  The third factor is " 'strongly related to the question of foreseeability itself' [citation], [and it] 'also accounts for third party or other intervening conduct.' " (*Sakai v. Massco Investments, LLC* (2018) 20 Cal.App.5th 1178, 1185.)  Here, there was little or no causal link between Gentry's asserted negligence and the harm suffered by C.S.  No evidence was introduced suggesting Gentry requested Gunnie's presence at the beach on the day in question, or that she even engaged in any affirmative acts to bring him to the beach.  Further, the undisputed evidence showed that Gunnie was leashed at the beach and left in the care of his owner (Hamouda),

---

[5]     C.S. asserts the harm he suffered was foreseeable because Gentry stated in a deposition that her children were bitten by dogs when they were young and she was subjectively aware a child could be bitten by a dog at a beach.  This argument misapprehends the nature of our legal duty inquiry. As the Supreme Court has explained, " 'a court's task—in determining "duty"—is not to decide whether a particular plaintiff's injury was reasonably foreseeable in light of a particular defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed ....'  (Italics omitted.)  In other words, there are numerous circumstances … in which a given injury may be 'foreseeable' in the fact-specific sense in which we allow juries to consider that question, but contrary to plaintiff's understanding the 'foreseeability' examination called for under a duty analysis … is a very different and normative inquiry." (*Parsons, supra*, 15 Cal.4th at p. 476.)

12

including when Gentry left to walk the beach. Gentry's mere accompaniment of Hamouda and her pet dog to the public beach was not closely related to the injuries C.S. suffered while Gentry was away on her beach walk.

"Even if the foreseeability factors of *Rowland* … weigh in favor of recognizing a duty of care, the courts 'must also consider whether public policy requires a different result.' [Citations.] ' "A duty of care will not be held to exist even as to foreseeable injuries ... where the social utility of the activity concerned is so great, and avoidance of the injuries so burdensome to society, as to outweigh the compensatory and cost-internalization values of negligence liability." ' " (*Jabo v. YMCA of San Diego County* (2018) 27 Cal.App.5th 853, 885; see also *Parsons, supra*, 15 Cal.4th at p. 476 [" 'social policy must at some point intervene to delimit liability' even for foreseeable injury [citation], and 'policy considerations may dictate a cause of action should not be sanctioned *no matter how foreseeable the risk*' "].) Thus, we turn now to the four public policy factors articulated in *Rowland*.

Beginning with the first public policy factor, we ascribe no moral blame to Gentry's conduct. Gentry travelled to a public beach with a group of adults including a dog owner and her pet dog, which was at all times leashed, left in the care of its owner, and—prior to the day in question—had exhibited no aggressive or violent tendencies of which Gentry was aware. There is nothing morally blameworthy or problematic about Gentry's behavior. Thus, this factor weighs in favor of recognizing an exception to the duty of care.

Turning to the next public policy factor, we are dubious that imposing liability on a person like Gentry would prevent future harm. A dog owner may choose to take his or her pet dog to a public space, irrespective of whether the pet owner is accompanied by a companion like Gentry. Indeed, someone like Gentry simply cannot compel a dog owner to refrain from

bringing his or her pet dog into a public space. A person like Gentry—who does not own or care for the pet dog at issue—also has no control over which precautionary measures the pet owner might take, if any, should the owner decide to take his or her pet dog to a public space. Nor would a person like Gentry be able to control the public space itself in a manner that might otherwise minimize or eliminate the risk of harm posed by the pet dog. Because a defendant in Gentry's shoes has little or no control over whether a pet owner takes his or her pet dog to a public space, and under what conditions he or she does so, the imposition of liability on a defendant like Gentry would not serve the interests of preventing future harm. (See *Cody F. v. Falletti* (2001) 92 Cal.App.4th 1232, 1244 [the goal of preventing future harm would not be "served by imposing liability on neighbors who ha[d] … no control over the [dog owner's] actions or the property from which the dogs escaped"]; *Donchin v. Guerrero* (1995) 34 Cal.App.4th 1832, 1846 ["If [a] dog is taken on a leash by its owner, off the [defendant's] premises, prevention of an attack by the dog may be beyond the [defendant's] control."].)

The imposition of negligence liability in cases like the present one would also impose unjustified burdens on persons like Gentry. It would saddle them with the obligation to refrain from venturing into the public with pet owners and their pet dogs, even if those pets have never shown aggressive or violent tendencies. Further, to the extent C.S. argues that people like Gentry could issue warnings to members of the public about the dangers posed by their companions' pet dogs, the burden is no less onerous. It is impractical, and intolerable, to expect a non-pet owner like Gentry to provide a warning to every member of the public in his or her vicinity that someone else's pet dog—in this case, Gunnie—poses a threat of harm, despite the fact

14

the pet in question has never shown signs of violence or aggression before. This factor strongly indicates that no legal duty of care exists.

The final public policy factor requires that we consider the prevalence of insurance for the risk involved. (*Rowland, supra*, 69 Cal.2d at p. 113.) The parties address this factor only briefly and neither party supports its analysis with any reference to the appellate record. It will suffice for us to say we are unaware of any type of insurance that would provide a policyholder with coverage when a third party's pet dog causes physical injuries to another third party on property neither owned nor controlled by the policyholder.

In sum, the *Rowland* factors point overwhelmingly against recognition of a legal duty of care in this case. We are of course sympathetic to young C.S., who indisputably suffered serious physical injuries as a result of his run-in with Gunnie. And we do not doubt that it was an emotionally painful and terrifying experience for all involved, especially C.S. and his family members. But the proper recourse is not to impose a legal duty of care on Gentry, who did nothing more than accompany an adult companion and her pet dog to the beach. Because Gentry did not owe a legal duty of care to C.S., the trial court properly dismissed the negligence cause of action against her.

IV

DISPOSITION

The judgment is affirmed.  Gentry is entitled to her appellate costs.


McCONNELL, P. J.

WE CONCUR:


HUFFMAN, J.


BUCHANAN, J.