Filed 3/9/23  Saffore v. Jones CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CHARLES A. SAFFORE, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> MARGARET A. JONES et al., <br><br> Defendants and Respondents. | B309099 <br><br> (Los Angeles County Super. Ct. No. 19STCV23574) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara M. Scheper, Judge.  Affirmed.

Charles A. Saffore, in pro. per., for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller, Kelly W. Migoya and Suzanne L. Schmidt for Defendants and Respondents.

_____

Plaintiff and appellant Charles A. Saffore appeals from a judgment of dismissal following the sustaining of a demurrer without leave to amend in favor of defendants and respondents Margaret A. Jones, Jones & Jones Management Group, Inc. (the Management Group), and Roxanne Partnership, L.P. (collectively defendants), in this action arising out of the habitability of a rental property. We conclude Saffore's contentions on appeal fail to present any clear, reasoned argument for reversal. The defendants' failure to meet and confer is not grounds to reverse the judgment, and the complaint failed to state a claim for negligence, fraud, or intentional tort. Therefore, we affirm.

## FACTS[1]

In 2015, Jones was the chief financial officer of the Management Group, as well as president and chief executive officer of Roxanne. Roxanne owned a rent-controlled 22-unit apartment building in Los Angeles. The water pipes in the apartment building were corroded, requiring complete replacement.

In April 2015, Roxanne submitted a tenant habitability plan (the plan) describing repair work for the property that would have an impact on habitability. The primary renovation work was described as a complete repipe with new copper piping for 22 units, as well as patching holes in the walls that were required

---

[1] We assume the truth of facts alleged in the operative third amended complaint or appearing in the attached exhibits, in accordance with the standard of review for an order sustaining a demurrer. (See, e.g., *Genis v. Schainbaum* (2021) 66 Cal.App.5th 1007, 1014–1015.)

to repipe.  The plan stated that holes would be made in the kitchens and bathrooms to access and replace existing pipes.  Tenants' possessions were to be covered in plastic to prevent damage.  With notice, the water would be shut off for only one or two days throughout the entire project.  The plan stated the tenants did not need to temporarily relocate, because their homes would be habitable outside of construction hours and they would not be exposed to hazardous materials.  Construction was expected to take 29 days, within a specific time frame.  The Los Angeles Housing and Community Investment Department (the Department) accepted the plan.

Saffore was a tenant in the building, with a medical history of pneumothorax, high blood pressure, and prediabetes.  He sent a request for permanent relocation assistance to the building owner in April 2015.  Saffore also filed a timely appeal of the plan on the ground that the work would complicate his existing medical conditions.  At a hearing on his appeal, Saffore requested temporary relocation assistance for the duration of the construction work, questioned the adequacy of the landlord's asbestos report, noted that testing for lead had not been completed, and doubted that the project would be completed within 29 days.

Based on concerns raised by tenants at the hearing, the landlord conducted additional testing for asbestos and lead.  The asbestos report showed no asbestos in the units and a minimal level in the exterior stucco material, which did not subject the building to abatement regulations.  The report confirmed the presence of lead-based paint, but the Department found the report was sufficient to allow the project to proceed, because the

3

use of lead-safe practices would adequately address potential exposure to lead-based materials.

A hearing officer for the Department issued a decision in August 2015. The hearing officer noted that Los Angeles Municipal Code (LAMC) section 152.03(A)(1) required landlords to obtain a permit before undertaking primary renovation work. In addition, LAMC section 152.05 and Rent Adjustment Commission (RAC) Regulations and Guidelines, regulation 715.00 et seq., provides that affected tenants have the option to voluntarily terminate their tenancies in exchange for permanent relocation assistance when primary renovation work and related work will impact the habitability of a rental unit for 30 days or more.

The hearing officer found that because the work described in the plan would be completed within 29 days, the units would be returned to habitable conditions outside of working hours, and the tenants would not be exposed to hazardous materials, the tenants were not entitled to permanent relocation assistance or temporary replacement housing. Although specific tenant circumstances might make it unsafe for a tenant to remain in place, there was insufficient evidence that it was unsafe for any tenant to remain in place during the proposed work. The new time frame for construction was to begin on September 14, 2015, and to finish on October 13, 2015.

The hearing officer accepted the plan and ordered the landlord to obtain all permits and inspection approvals required by the Los Angeles Department of Building and Safety (LADBS), including any corrections required. The landlord was ordered to perform all work in a lead-safe manner, in accordance with established practices. Under LAMC section 152.05(A), if the

4

primary renovation work or any related work continued for 30 days longer than the projected completion date, the option of any affected tenant to accept permanent relocation assistance must be renewed.

Work commenced on September 14, 2015. Saffore requested a negative air machine to be used on September 21, 2015, when the walls would be open in his apartment, due to his history of pneumothorax. The record does not reflect whether he received a negative air machine.

After an inspection on September 30, 2015, the LADBS issued a correction notice for several items. One of the items listed was to provide insulation on all hot water mains and circulating piping, including specific instruction to install insulation on the hot water main at the water heater location.

The Department inspected all of the tenant units on October 26, 2015, for compliance with the plan, except one in which the tenant was not home and had a dog with a history of biting. The inspection showed that all patching, painting, and clean-up work for the repiping of the building had been completed. An LADBS inspector inspected the plumbing work and the repipe permit was "[f]inaled" by the LADBS on October 29, 2015. The plan was closed as of October 29, 2015.

On November 16, 2015, the Management Group denied Saffore's request for permanent relocation assistance, because the plan was closed by the Department's inspection on October 29, 2015, within 30 days of the completion date of October 13, 2015.

In March 2017, the Management Group notified tenants that the City of Los Angeles Rent Stabilization Board had

approved a rent increase of $20.06 per month based on the capital improvement, which would be effective May 1, 2017.

Saffore found an area of piping in the garage that was not insulated. Complaint number 624968 was filed with the Department on May 15, 2017, concerning a leaky or defective plumbing fixture. The Department conducted an inspection on June 1, 2017. The inspector observed exposed piping in the garage area. The Department issued an order to the owner to provide permits and a final inspection approval from LADBS for the plumbing repipe to include exposed pipes in the garages on two sides of the building. In addition, the owner was ordered to insulate all exposed hot water pipes in the garages on two sides of the building. Complaint number 624968 was closed that day.

The inspector opened complaint number 628002, however, to address the uninsulated hot water piping in the garage area. An inspection notice was sent to the property owner requesting that the owner insulate all exposed hot water pipes in all garage areas. The exposed piping in the garage area was subsequently covered over with plaster, without obtaining a permit for the plaster work. The inspector verified that the owner had previously obtained a plumbing permit for the plumbing work, which was signed off by the LADBS. At an inspection on July 10, 2017, the inspector found the hot water piping insulation violation was corrected and closed complaint number 628002.

Saffore wrote to the Department's Regulatory Compliance and Code Bureau alleging that complaint numbers 624968 and 628002 had been closed in error. He asked the Department to have LADBS reinspect the plumbing work. Chief Inspector Robert Galardi replied to Saffore on October 25, 2017, to explain the inspections that had been conducted and the closure of the

complaints. He noted that the Department had no authority to request that LADBS reinspect the completed permitted plumbing work.

On June 30, 2018, Saffore moved out of his rental unit.

## PROCEDURAL HISTORY

On July 8, 2019, Saffore, representing himself, filed a complaint against several defendants, including Jones, the Management Group, and Roxanne. He filed an amended complaint, followed by a second amended complaint. Jones filed a demurrer to the second amended complaint, as did the Management Group and Roxanne. The record on appeal does not contain the ruling on the demurrers or a reporter's transcript of the hearing, but the respondents' brief states that the trial court sustained the demurrers with leave to amend.

On July 17, 2020, Saffore filed the operative third amended complaint against Jones, the Management Group, and Roxanne, claiming negligence, intentional tort, and fraud. In the cause of action for negligence, Saffore alleged the defendants did not follow rent control regulations and the provisions of the plan. The defendants allowed the contractor to practice unsafe lead and asbestos practices by not covering walls located at the entrance walk way, the rear walk way, or the garage and kitchen areas. The laundry room was covered with paper, rather than the required plastic. The defendants provided unsubstantiated lead and asbestos reports with unfounded samples for testing that were not obtained from the subject property. The defendants also allowed the contractor to plaster over areas that were required to be inspected and approved before covering, in

7

order to claim that the primary renovation work was completed on time and avoid paying relocation assistance for work not completed within 30 days. The last day work was done without a permit was July 10, 2017.

Saffore stated the basis for liability for the cause of action for intentional tort was fraud, but also stated the basis was "Intentional Tort, that is classified as both Criminal and Civil acts coupled with Nuisance." In this cause of action, Saffore alleged the Management Group agreed to install a certain type of insulation. The Department initiated a complaint on June 7, 2017, which verified the insulation of the hot water circulation pipes was "intentionally breached on July 10, 2017 without a Permit for Compliance Inspection Approval." The defendants continued to collect the rent increase imposed based on the capital improvement from July 10, 2017, through June 30, 2018. The capital improvement was not completed, however, because no compliance inspection approval had been issued. Saffore was not given temporary relocation assistance for the construction work that exceeded the plan's projected completion date.

In the cause of action for fraud, Saffore alleged that by failing to obtain a permit, the defendants had no authority to increase his monthly rent based on a capital improvement. The defendants' representation was false, because the work was performed without a compliance inspection approval. The defendants continued to charge the rent increase based on the capital improvement without obtaining an approval through the date that Saffore moved out. The defendants concealed the fact that they had not obtained a compliance inspection approval for work performed on July 10, 2017, which the defendants were required to disclose. The defendants promised the tenants would

8

not be affected by the plan for more than 30 days, but the work extended beyond the specified date and the defendants denied Saffore's request for temporary relocation assistance and did not obtain the compliance inspection approval for the July 10, 2017 construction work as required. Saffore paid the rent increase in reliance on the defendants' compliance. He discovered the fraud when he received the letter from Galardi stating that the defendants had not obtained a compliance inspection approval for the July 10, 2017 work. The fraud caused Saffore mental anguish and inflicted emotional distress, as well as monetary damages from the rent increase. Saffore sought $1 million in relocation assistance, personal injury damages, and punitive damages. Several documents were attached to the complaint.

The defendants filed a demurrer to the third amended complaint and a motion to strike the complaint. They argued the complaint was uncertain, unintelligible, and failed to plead sufficient facts to state a cause of action. The defendants' attorney filed a declaration stating that prior to the demurrer to the second amended complaint, she had sought to meet and confer with Saffore. Saffore disagreed about representations made during their discussions and made remarks about her that she perceived as disparaging. In her view, any attempt to meet and confer about the most recent demurrer and motion to strike was futile.

In opposition to the demurrer, Saffore objected to the failure to make a good faith effort to meet and confer. He argued that the cause of action for negligence stated the defendants had a duty to provide permanent relocation assistance under LAMC section 152.05(A), which was breached when the construction extended more than 30 days longer than the proposed completion

9

date, and he suffered mental anguish and a sprained spine from moving furniture due to the denial of permanent relocation assistance fees.

He also argued that the elements of an intentional tort alleged were a duty to install insulation of all hot water circulating pipes, which was breached when the work was not completed, which caused Saffore to pay an unsupported rent increase and suffer emotional distress. With respect to fraud, Saffore alleged the representation made to him was the rent increase based on a capital improvement, which the defendants denied was incomplete, and he was denied relocation assistance fees.

A hearing was held on the demurrer and motion to strike on October 23, 2020. No reporter's transcript or settled statement has been included in the record on appeal. The trial court sustained the demurrer without leave to amend. The court found the allegations of the complaint were vague and confusing. The third amended complaint was uncertain in its entirety, from the numbering of the causes of action to the confusing allegations and the disorganized attachment of exhibits. There were no allegations establishing Jones was the alter ego of the other defendants. With respect to the cause of action for negligence, Saffore failed to allege any duty owed to him by Jones or the Management Group as to lead and asbestos practices or plastering over exposed pipes. Roxanne owned the property, but Saffore did not allege facts showing Roxanne owed him a duty or how that duty was breached. The cause of action for intentional tort did not plead sufficient facts to state any claim. The complaint did not allege any species of fraud with the requisite specificity. Saffore did not allege any specific misrepresentation

10

or who made it.  He did not allege that the defendants had a duty to disclose anything to him specifically.  He also did not allege that the defendants made a promise with the intent to deceive or facts showing that they did not intend to perform on any promise.  Saffore did not request leave to amend and did not suggest any basis for amendment.  The trial court entered an order of dismissal.  Saffore filed a timely notice of appeal.

## DISCUSSION

### Standard of Review

"The function of a demurrer is to test whether, as a matter of law, the facts alleged in the complaint state a cause of action under any legal theory." (*Cardenas v. Horizon Senior Living, Inc.* (2022) 78 Cal.App.5th 1065, 1069.)  "An order sustaining a demurrer without leave to amend is reviewed de novo.  The court exercises its independent judgment to determine whether or not the complaint states facts sufficient to constitute a cause of action as a matter of law.  [Citation.]  We assume the truth of properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and matters that are judicially noticeable.  [Citation.]  We construe the pleading in a reasonable manner and read the allegations in context.  [Citation.]  However, courts will not close their eyes in situations where a complaint contains allegations of fact inconsistent with attached documents/exhibits, or allegations contrary to facts which are judicially noticed.  [Citation.]  Where facts appearing in attached exhibits or judicially noticed documents contradict, or are inconsistent with, the complaint's allegations, we must rely on

11

the facts in the exhibits and judicially noticed documents." (*Genis v. Schainbaum*, *supra*, 66 Cal.App.5th at pp. 1014–1015.)

On appeal, the judgment of the trial court is presumed to be correct, and appellant has the burden of demonstrating reversible error by an adequate record. (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574.) Moreover, any issue not adequately raised or supported is deemed forfeited. (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6; see *Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768 ["The appellate court is not required to search the record on its own seeking error"].)

" 'Appellate briefs must provide argument and legal authority for the positions taken. "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' [Citation.] 'We are not bound to develop appellants' argument for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.' " (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.) "We may and do 'disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt.' " (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153.)

It "is appellant's burden to provide a reporter's transcript if 'an appellant intends to raise any issue that requires consideration of the oral proceedings in the superior court . . . ' (Cal. Rules of Court, rule 8.120(b)), and it is the appellant who in the first instance may elect to proceed without a reporter's transcript (Cal. Rules of Court, rule 8.130(a)(4))." (*Sanowicz v. Bacal* (2015) 234 Cal.App.4th 1027, 1034, fn. 5.) In

an appeal involving the abuse of discretion standard of review, a reporter's transcript, or an agreed or settled statement of the proceedings is usually indispensable. (See, e.g., *Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 448 ["The absence of a record concerning what actually occurred at the trial precludes a determination that the trial court abused its discretion"]; see *Southern California Gas Co. v. Flannery* (2016) 5 Cal.App.5th 476, 487 [without reporter's transcript or suitable substitute, appellant cannot demonstrate an award of attorney fees constituted an abuse of discretion].) That a party is in propria persona does not excuse compliance with these requirements. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984–985; *Kobayashi v. Superior Court* (2009) 175 Cal.App.4th 536, 543.)

## Contentions are not Understandable

Saffore's opening brief on appeal does not contain any cognizable argument supporting reversal. For example, under the heading "Reversal of erroneous judgment of dismissal is warranted," Saffore makes no understandable argument. Saffore provides separate headings for his contentions, but several of headings are followed by no legal or factual argument whatsoever, and therefore, have been waived. The statements in his briefs are also conclusory, without an understandable analysis of citations to the record or the law.

The failure to provide a reporter's transcript or suitable substitute for any hearing at issue prevents this court from reviewing objections raised during the hearings or the trial court's discretionary rulings. For example, Saffore contends the

13

trial court judge should have recused herself, but there is no evidence in the appellate record of any discussion or action in the trial court concerning recusal. Based on the argument in Saffore's brief, this issue does not even relate to the ruling on the demurrer to the operative third amended complaint. As discussed further below, the demurrer was properly sustained, and no error has been shown on appeal.

**Meet and Confer Requirement**

Saffore contends the judgment must be reversed because the defendants failed to meet and confer as required by statute. This is incorrect. "Under [Code of Civil Procedure] section 430.41, before filing a demurrer, the demurring party must meet and confer with the party who filed the challenged pleading 'in person or by telephone' to determine if the demurring party's objections can be resolved by agreement. (§ 430.41, subd. (a)(1).) If the parties are unable to meet and confer at least five days before the responsive pleading is due, the demurring party must file a declaration stating that a good faith attempt to meet and confer was made and explaining the reasons the parties could not meet and confer. (*Id.*, subd. (a)(2).) . . . [Citation.] . . . However, under section 430.41, subdivision (a)(4), '[a]ny determination by the court that the meet and confer process was insufficient shall not be grounds to overrule or sustain a demurrer.' " (*Dumas v. Los Angeles County Bd. of Supervisors* (2020) 45 Cal.App.5th 348, 355.) No abuse of the trial court's discretion has been shown with respect to the meet and confer requirement, and the order sustaining the demurrer may not be reversed for failing to meet and confer.

14

## Complaint Fails to State a Claim

Saffore has not shown that the allegations of the complaint were sufficient to state any claim against the defendants.

### A. Negligence

"To succeed in a negligence action, the plaintiff must show that (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the duty, and (3) the breach proximately or legally caused (4) the plaintiff's damages or injuries." (*Thomas v. Stenberg* (2012) 206 Cal.App.4th 654, 662.) "The limitations period for a cause of action for ordinary negligence is two years." (*So v. Shin* (2013) 212 Cal.App.4th 652, 662.)

The complaint does not allege a duty that the defendants had to Saffore that was breached within the statute of limitations for negligence. The complaint refers generally to RAC regulations and the plan, but does not state a particular regulation or provision created a duty to Saffore that was breached by the defendants' conduct. The complaint alleges the defendants provided false lead and asbestos reports prior to construction, and allowed unsafe lead and asbestos practices during construction, but Saffore was aware of any claim that he had based on these acts no later than October 29, 2015, when the Department closed the plan. Saffore's initial complaint was filed on July 8, 2019, long after the statute of limitations expired to bring claims based on the testing reports or the practices during construction.

Saffore alleged the defendants were negligent by allowing a contractor to plaster over exposed piping in the garage in July

15

2017. It is not clear whether Saffore contends an additional permit was required to complete the plastering work, or an additional inspection and approval of the piping before or after plastering, or if he alleges required insulation was not installed before the pipes were plastered over, and if so, the factual basis for making such an allegation. The complaint fails, however, to allege the source of a duty to Saffore that was breached, or how plastering over the exposed piping caused Saffore to suffer any damages. The documents attached to the complaint show that all required inspections and approvals were completed prior to plastering the area. There is no allegation that Saffore's unit was not habitable as a result of the conditions in the garage. The complaint failed to state a cause of action for negligence.

### B. Fraud

The elements of fraud are: a misrepresentation (false representation, concealment, or nondisclosure); knowledge the misrepresentation is false; intent to induce reliance on the misrepresentation; justifiable reliance; and damages as a result of the misrepresentation. (*Cohen v. Kabbalah Centre Internat., Inc.* (2019) 35 Cal.App.5th 13, 20; *Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 173.)

The cause of action for fraud fails to allege any representation made to Saffore with the requisite specificity for a fraud claim, including the person who made the representation, the content of the representation, and the date that the representation was made. To the extent that Saffore is alleging the notice sent by the Management Group about a monthly rent increase based on the capital improvement project contained a

16

false statement because the defendants had not obtained a compliance inspection approval for work in the garage of the building, he has failed to allege a claim for fraud. He has not alleged that a compliance inspection approval was required before a rent increase could be imposed based on a capital improvement project. If it was required, he has not alleged the Management Group was aware the project was not complete, such that the statement about a monthly rent increase approved by the rent control authority was false. There is no allegation that the Management Group intended to deceive Saffore when it made the statement, rather than making the statement in a good faith belief that the capital improvement was complete, and a rent increase had been authorized. No claim for fraud based on a misrepresentation of fact has been stated.

The complaint did not state a claim based on concealment of the status of a compliance inspection approval, because there was no allegation that the defendants had a duty to inform Saffore about the status of a compliance inspection approval. The complaint also failed to state a cause of action for a false promise without the intent to perform, because there is no allegation that the defendants did not intend to perform the promises that they made in the plan at the time they made them. The complaint fails to state a claim for any species of fraud.

### C. Intentional Tort

To the extent that the cause of action for intentional tort is based on fraud, it did not allege any fraudulent representation with the specificity necessary to state a fraud claim as stated above. To the extent that the cause of action for intentional tort

17

is based on nuisance, the complaint fails to state a cause of action.  The elements of an action for private nuisance are: (1) the plaintiff must prove an interference with his use and enjoyment of its property; (2) the invasion of the plaintiff's interest in the use and enjoyment of the land must be substantial, i.e., it caused the plaintiff to suffer substantial actual damage; and (3) the interference with the protected interest must not only be substantial, it must also be unreasonable, i.e., it must be of such a nature, duration, or amount as to constitute unreasonable interference with the use and enjoyment of the land.  (*Today's IV, Inc. v. Los Angeles County Metropolitan Transportation Authority* (2022) 83 Cal.App.5th 1137, 1176.)  The complaint does not allege that the exposed piping in the garage interfered with Saffore's use and enjoyment of his unit in any way, and therefore, the complaint failed to state a claim for an intentional tort based on nuisance.  The demurrer was properly sustained.

## DISPOSITION

The judgment is affirmed. Margaret A. Jones, Roxanne Partnership, L.P., and Jones & Jones Management Group, Inc., are awarded their costs on appeal.

NOT TO BE PUBLISHED.


MOOR, J.


We concur:


RUBIN, P. J.


KIM, J.